IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JEFFREY L. HAIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | 4:04CV3363 |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| KATCH, L.L.C., a Nebraska | ) | |
| Corporation, d/b/a LUCKIE'S | ) | |
| LOUNGE & GRILL, | ) | |
| | ) | |
| Defendant. | ) | |

On January 11, 2005, the plaintiff, Jeffrey L. Haight, filed an amended complaint against the defendant, Katch, L.L.C., a Nebraska corporation, d/b/a Luckie's Lounge & Grill, alleging that the defendant failed to reemploy him in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 36 U.S.C.A. §§ 4301-4333 (West 2002). Now before me are the defendant's motion for summary judgment and its supporting documents, (see filings 32-34), the plaintiff's response to the defendant's motion and its supporting documents, (see filings 44, 46, 48), and the defendant's reply to the plaintiff's response, (see filing 53). For the following reasons, I find that the defendant's motion must be granted in part.

I.  BACKGROUND

The following facts are undisputed. (See Br. Supp. Def.'s Mot. Summ. J. (Def.'s Br.), Filing 33, Statement of Uncontroverted Facts ¶¶ 1-25; Pl.'s Response Def.'s Mot. Summ. J. (Pl.'s Br.), Filing 44, ¶ 1 ("Plaintiff has no disagreement with any of Defendant's Statement of Uncontroverted Facts, paragraphs 1-25.").)

The defendant is a Nebraska limited liability company doing business as

Luckie's Lounge & Grill (Luckie's Lounge) in Lincoln, Nebraska. (See Def.'s Br., Statement of Uncontroverted Facts ¶¶ 2, 3.) The plaintiff began working at Luckie's Lounge in 2003, and in August 2004 he held the position of "Bar Manager." (See id. ¶ 2.) In addition, the plaintiff was responsible for maintaining a website that promoted Luckie's Lounge (hereinafter "the Lucky Lounge website"). (See id. ¶ 15.) Throughout the duration of his employment, the plaintiff was supervised by Kathy Hagge, who was the primary owner and manager of Luckie's Lounge. (See id. ¶ 4.)

The plaintiff was also a member of the United States Army Reserve. (See id. ¶ 7.) During the summer of 2004, the plaintiff received notice that his unit would be deployed to Iraq. (See id.) The plaintiff was called up for duty on August 23, 2004, but was released on August 28, 2004, due to injury. (See id.)[1]

The plaintiff's last day of work at Luckie's Lounge was on approximately August 13, 2004. (See id. ¶¶ 2.) After his call to duty, the plaintiff had no contact with Hagge until September 6, 2004. (See id. ¶ 8.) On that day, the plaintiff met Hagge in her office, informed her that "medical reasons" prevented his deployment to Iraq, and requested reemployment at Luckie's Lounge. (See id. ¶¶ 8-9.) Hagge replied that only a "cook position" was available. (Id. ¶ 9.) The plaintiff told Hagge that she was required to reinstate him to his former position as Bar Manager. (See id. ¶ 10.) Hagge stated that she wanted to discuss her "legal obligations" with her attorney, but, as it was Labor Day, her attorney was not available. (Id.) The plaintiff rose and said, "Well, fine, you know, if you don't want to hire me back, I'll just contact JAG and the veterans affairs and just proceed." (See id. (quoting Def.'s Index of Evid., Filing 34, Ex. 2, Haight Dep. 15:11-13).) The plaintiff then left the office. (See id. ¶ 10.) Although the plaintiff's parting comment suggests otherwise, the parties agree that Hagge made no "employment decision" regarding the plaintiff during the September 6 meeting. (Id. ¶ 11.)

---

[1] The plaintiff injured his left leg in a rollerblading accident shortly before he reported for duty. (See Def.'s Br., Filing 33, Statement of Uncontroverted Facts ¶ 7.)

Later that day, the plaintiff sent an e-mail message to Hagge. (See id. ¶ 12 (citing Def.'s Index of Evid., Filing 34, Ex. 3 ¶ 7 & Attach B).) In part, this message stated,

> Here is the web site you can direct your lawyer to. I placed some of the general rules for quick reference. Make sure you tell him or her that I informed you that I was by law able to get my same job back. I was the bar manager not a cook. I will contact my lawyers, thank goodness I registered you as my employer when I went to Salt Lake City. Also please mail me my last pay stub.
>
> After I talk to my lawyers I will talk to two of my friends at the radio station and 10/11 news . . . you know while in [H]astings I was on the news three times should [sic] make for an interesting story, I don't know if it will help [L]uckie's.

(Def.'s Index of Evid., Filing 34, Ex. 3, Attach B.)

On the following day, the plaintiff altered the Luckie's Lounge website by "dismantl[ing] the links on the website so that the tabs labeled 'menu,' 'coupon,' 'specials' and 'events' were no longer accessible." (See Def.'s Br., Filing 33, Statement of Uncontroverted Facts ¶ 14.) In addition, he posted a message on the website that stated, in part, as follows:

> I told my boss that I wanted my old job back but she said she didn't have to hire me back as [a] bar manager but she had a cook job open. I tried to explain to her that the sailors and soldiers act protected me but she wanted to call her lawyer. So needless to say I am looking for work. I don't need to work for someone that will not be at the very least patriotic.

(Id. (quoting Def.'s Index of Evid., Filing 34, Ex. 3, Attach. D).) Then on September 11, 2004, the plaintiff picketed outside Luckie's Lounge in military uniform, carrying

3

a sign indicating that Luckie's Lounge failed to re-hire him.  (See id. ¶ 16.)

The plaintiff was never reemployed at Luckie's Lounge.  On January 11, 2005, the plaintiff filed his amended complaint against the defendant, alleging that the defendant's refusal to reemploy him violated the USERRA.  (See Am. Compl., Filing 8 ¶¶ 9-11.)  The defendant has moved for summary judgment, (see filing 33), and my analysis of this motion follows.[2]

## II.   STANDARD OF REVIEW

---

[2]The plaintiff has submitted a brief in opposition to the defendant's motion, (see Pl.'s Br., Filing 44), along with two copies of a supporting affidavit, (see Haight Aff., Filings 46, 48).  The affidavit states,

> 1.   That your affiant is the Plaintiff in the above entitled cause of action;
> 2.    That had your affiant further been reinstated as a Bar Manager as he was supposed to be by the Defendant on September 6, 2004[,] your affiant would have continued to work at Luckie's for at least 40 hours a week for at least 8 months as your affiant needed the income to live off of;
> 3.   That your affiant would work at Luckie's even though he was attempting to purchase and operate another bar business in Gretna, called Miracles, because he needed the money;
> 4.    That your affiant sought additional work in addition to Miracles after not getting rehired at Luckie's[;]
> 5.    That your affiant admits that had he been hired back by Luckie's according to the law, he would not have gone into Luckie's website nor picketed outside the bar.

(Haight Aff., Filing 46, 48.)  The defendant has moved to strike paragraphs 2-4 of this affidavit.  (See Filings 54-55.)  Although the defendant's arguments are not without merit, I find that the plaintiff's affidavit does not alter my conclusions in this case.  Therefore, the defendant's motion to strike will be denied as moot.

A motion for summary judgment shall be granted by the court when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. Id. In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson, 477 U.S. at 257, and "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," id. at 256 (citing Federal Rule of Civil Procedure 56(e)).

### III. ANALYSIS

"Congress enacted the USERRA in 1994 to provide 'prompt reemployment' to those who engage in 'noncareer service in the uniformed services.'" McGuire v. United Parcel Service, 152 F.3d 673, 676 (7th Cir. 1998) (quoting 38 U.S.C. § 4301(a)(1)-(2)). Although "the USERRA is to be liberally construed in favor of those who served their country," "the plaintiff at all times bears the burden of proving that he is entitled to reemployment." Id. (citations omitted).

The USERRA states,

> [A]ny person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be

> entitled to the reemployment rights and benefits and other employment benefits of this chapter if—
> 
> (1) the person . . . has given advance written or verbal notice of such service to such person's employer;
> 
> (2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and
> 
> (3) . . . the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e) [(which outline the requirements for timely notice to employers)].

38 U.S.C. § 4312(a). However, "An employer is not required to reemploy a person under this chapter if . . . (A) the employer's circumstances have so changed as to make such reemployment impossible or unreasonable; (B) in the case of a person entitled to reemployment under subsection (a)(3), (a)(4), or (b)(2)(B) of section 4313,[3] such employment would impose an undue hardship on the employer; or (C) the employment from which the person leaves . . . is for a brief, nonrecurrent period and there is no reasonable expectation that such employment will continue . . . for a significant period." 38 U.S.C. § 4312(d)(1).[4]

---

[3] 38 U.S.C. § 4313(a)(3) and (b)(2)(B) provide for the reemployment of persons with disabilities "incurred in, or aggravated during," service. Section 4313(a)(4) provides for the reemployment of persons who lack qualifications. None of these sections is implicated in this case.

[4] With a minor exception, the Amended Complaint cites the USERRA generally without identifying the sections or subsections upon which the plaintiff's claim depends. (See generally Am. Compl., Filing 8; see also id. ¶¶ 1-2 (citing the USERRA enforcement provision).) Nor does the plaintiff's response to the defendant's motion for summary judgment specify the statutory basis for his claim. (See Filing 44.) However, the allegations set forth in the complaint and the elements specified in the report of the parties' planning conference, (see filing 56), strongly suggest that the plaintiff's cause of action is based upon 38 U.S.C. § 4312. Although the USERRA contains a provision that prohibits employment discrimination based on

The defendant has not argued that the plaintiff cannot show: 1) that his absence from work was necessitated by his service in the reserve; 2) that he provided advance notice of such service; 3) that the cumulative length of his absence and all previous absences by reason of such service did not exceed five years; or 4) that he reported to, or submitted an application of employment to, the defendant in a timely fashion. Compare 38 U.S.C. § 4312(a) with Def.'s Br., Filing 33. Nor does the defendant invoke any of the defenses set forth in § 4312(d)(1). (See generally Def.'s Br., Filing 33.) In short, the defendant concedes—at least, for the purposes of its motion for summary judgment—that the plaintiff was entitled to "prompt reemployment." Furthermore, it is clear that the defendant did not promptly reemploy the plaintiff; indeed, the plaintiff was never reemployed at Luckie's Lounge. However, the defendant argues that it is nevertheless entitled to summary judgment because it was not required to reemploy the plaintiff "on Labor Day, on the spot, the first time [the plaintiff] notified Defendant that he wanted to return to work," (Def.'s Br., Filing 33, at 12), and because its refusal to reemploy the plaintiff was justified due to the plaintiff's misconduct. I shall analyze each of the defendant's arguments in turn.

### A.

The USERRA provides that "a person entitled to reemployment under section 4312 . . . shall be promptly reemployed in a position of employment." 38 U.S.C. §

---

military service, see 38 U.S.C. § 4311, the plaintiff has not alleged that the defendant discriminated against him, but "merely" failed to reemploy him. (See Am. Compl., Filing 8 ¶¶ 5-11; see also Report of the Parties' Planning Conference, Filing 56, at 1-2 (setting forth the elements of the plaintiff's claims).) I note parenthetically that the Sixth Circuit has held that "a person seeking relief under § 4312 must also meet the discrimination requirement contained in § 4311." Curby v. Archon, 216 F.3d 549, 555-57 (6th Cir. 2000). But see Jordan v. Air Products & Chemicals, Inc., 225 F. Supp. 2d 1206, 1207-08 (C.D. Cal. 2002) (arguing that the Curby rule is mere dicta). However, as the defendant has not argued that the plaintiff is required to allege and prove discrimination based on military service, I need not determine whether the Curby rule ought to be applied in this case.

7

4313(a). The term "promptly" is not defined in the USERRA; however, proposed regulations state,

> "Prompt reemployment" means as soon as practicable under the circumstances of your case. Absent unusual circumstances, your reemployment must occur within two weeks of your application for reemployment. For example, prompt reinstatement after your weekend National Guard duty generally means the next regularly scheduled working day. On the other hand, prompt reinstatement following several years of active duty may require more time, because your employer may have to reassign or give notice to another employee who occupied your position.

Regulations Under the Uniformed Services Employment and Reemployment Rights Act of 1994, as Amended, 69 Fed. Reg. 56266-01, 56295 (Sept. 20, 2004) (to be codified at 20 C.F.R. Pt. 1002). See also Rogers v. City of San Antonio, 392 F.3d 758, 763 (5th Cir. 2004) (quoting the proposed regulation). The legislative history of the USERRA contains similar language:

> The provisions of section 4313 require prompt reinstatement. The Committee recognizes that what is prompt depends on the circumstances of each case. However, reinstatement after weekend National Guard duty would, in most cases, be the next scheduled working day, while reinstatement after five years on active duty may require giving notice to an incumbent employee who may have to be "bumped." The Committee intends that any undue delay in reinstatement would be subject to a claim for lost wages.

H.R. Rep. No. 103-65, pt. 1, at 32 (1993), reprinted in 1994 U.S.C.C.A.N. 2449, 2465; see also S. Rep. No. 103-158, at 54 (1993). Thus, it seems that "prompt reemployment" may mean anything from reinstatement during the next scheduled shift to reinstatement two weeks after the application for reemployment—or even later—depending upon the circumstances.

8

The defendant notes correctly that the plaintiff "was not returning from a weekend drill or a time-specific training," and that the plaintiff's return from duty and application for reemployment came much earlier than expected. (Def.'s Br., Filing 33, at 14.)[5] Furthermore, it is undisputed that the plaintiff's former position was not open on September 6, 2004, when the plaintiff applied for reemployment. Nevertheless, I find that the evidence does not establish that it was not "practicable" to reinstate the plaintiff to his former position on September 6, 2004. Despite the circumstances cited by the defendant, I cannot say that, as a matter of law, there was insufficient time to arrange for the plaintiff to resume his former position during any shift on September 6, 2004, or to arrange for an alternate position for the person who took over the plaintiff's job. Indeed, the record is silent regarding these critical points. Although the available evidence does tend to support an inference that, in the plaintiff's case, "prompt" reinstatement might occur later rather than sooner, the moving party is not entitled to the benefit of favorable inferences at this stage. Instead, it must establish that there is no genuine issue of material fact for trial, and I conclude that the defendant has failed to meet this burden.

The defendant argues that Hagge's lack of knowledge of the USERRA should excuse its failure to reemploy the plaintiff on September 6, 2004. The defendant asserts, "Consulting legal counsel to become educated as to Defendant's legal obligations under the complex USERRA is not an unreasonable request under the

---

[5]The defendant argues too that the plaintiff failed to give reasonable notice of his intent to return to work. (See Def.'s Br., Filing 33, at 13-14; Def.'s Reply Br., Filing 53, at 5-6.) While the unexpected appearance of the plaintiff is a circumstance that is relevant to the "promptness" inquiry, I reject the defendant's argument to the extent that it implies that the plaintiff did not make a sufficient application for reemployment. It is undisputed that the plaintiff met with his supervisor, who was also the primary owner and manager of Luckie's Lounge; informed her that he had returned from military service; and requested reemployment in his former position. This was sufficient to notify the defendant of the plaintiff's desire for reemployment. See McGuire v. United Parcel Service, 152 F.3d 673, 676-77 (7th Cir. 1998).

9

circumstances." (Def.'s Br., Filing 33, at 14.) Though it may be true that the defendant did not act unreasonably, I am not convinced that persons returning from service who seek to resume their former positions of employment must bear the costs and burdens of delays while employers research the USERRA. See H.R. Rep. No. 103-65, pt. 1, at 32 (1993), reprinted in 1994 U.S.C.C.A.N. 2449, 2465 ("The Committee intends that any undue delay in reinstatement would be subject to a claim for lost wages."). In other words, I find that if the plaintiff can show that it was "practicable" for the defendant to reemploy him on September 6, 2004, the defendant's ignorance of its obligations under the USERRA does not justify a delay in the plaintiff's reinstatement.

In sum, I conclude that there remains a genuine issue as to whether, under the circumstances of this case, reemployment should have occurred on September 6, 2004.

### B.

The defendant also argues that before it made any decision with respect to the plaintiff's reemployment, the plaintiff "committed a terminable offense that precluded his reemployment." (Def.'s Br., Filing 33, at 15.) I agree.

Beginning in 2004 and lasting throughout the duration of the plaintiff's employment, employees at Luckie's Lounge were subject to "Work Rules." (See Def.'s Br., Statement of Uncontroverted Facts ¶ 5.) These rules provided that willful destruction of company property and abuses or misuses of company property or equipment were punishable by termination. (See id. ¶ 6.) It is undisputed that the plaintiff was familiar with these rules. (See id. ¶ 5.) Nevertheless, on September 7, 2004, the plaintiff disabled the Luckie's Lounge website and posted on it a message that mischaracterized Hagge's response to his request for reemployment and asserted that the defendant was not patriotic. The defendant argues that the plaintiff's actions violated the Work Rules, and that Hagge decided to terminate the plaintiff's

employment (though it might be more accurate to say that she decided not to reemploy him) when she learned about the changes to the website. (See Def.'s Br., Filing 33, at 12-13, 15; see also Def.'s Index of Evid., Filing 34, Ex. 1, Hagge Aff. ¶ 8.)

The plaintiff disputes none of this, but argues only that "Plaintiff's conduct after Defendant's refusal to reinstate him is irrelevant and immaterial to the case at bar." (Pl.'s Br., Filing 44 ¶ 2.c.) I take it that the plaintiff means to suggest that since the defendant failed to reemploy him on September 6, 2004, he was free to engage in misconduct without forfeiting the job protection provided under the USERRA. The plaintiff has cited no authority in support of this position, and I am not persuaded that it is correct. Cf. Hill v. Michelin North America, Inc., 252 F.3d 307, 315 n.4 (4th Cir. 2001) ("Hill suggested . . . that if not for the improper transfer . . . he would not have been in a position to make a mistake on the time card [which resulted in his termination] . . . . If the transfer is ultimately determined to violate USERRA, we do not believe that USERRA then gives Hill blanket immunity for his actions . . . .").

The USERRA does protect persons who served in the uniformed services from discharge[6] under certain circumstances. For example, 38 U.S.C. § 4311 provides that an employer's decision to terminate cannot be motivated by a person's membership or service in the uniformed services. However, since the plaintiff has not alleged that the defendant discriminated against him based upon his service, (see supra Part III at n.4), this section is not applicable.

The USERRA also states,

A person who is reemployed by an employer under this chapter shall not

---

[6] I appreciate the fact that since the plaintiff was not reemployed, it is not truly accurate to speak of his "discharge." However, for present purposes I shall assume that the plaintiff should have been reemployed on September 6, 2004, and that he is entitled to the discharge protections offered under the USERRA.

11

>be discharged from such employment, except for cause—
>
>>(1) within one year after the date of such reemployment, if the person's period of service before the reemployment was more than 180 days; or
>>
>>(2) within 180 days after the date of such reemployment, if the person's period of service before the reemployment was more than 30 days but less than 181 days.

38 U.S.C. § 4316(c). The plaintiff's period of service lasted less than 30 days; thus, it seems that the defendant need not demonstrate cause for "discharging" the plaintiff. Nevertheless, the undisputed evidence clearly establishes that the defendant had cause for discharging the plaintiff on September 7, 2004. "An employer may terminate a protected employee for cause 'if the discharge satisfies two conditions of reasonableness: "(1) that it is reasonable to discharge employees because of certain conduct, and [(2)] that employee had fair notice . . . that such conduct would be grounds for discharge."'" Francis v. Booz Allen Hamilton, Inc., No. Civ. A. 04-669, 2005 WL 991543, at *3 (W.D. Va. April 22, 2005) (quoting Jordan v. Jones, 84 F.3d 729, 732 (5th Cir. 1996))[7]; see also Regulations Under the Uniformed Services Employment and Reemployment Rights Act of 1994, as Amended, 69 Fed. Reg. 56266-01, 56298 (Sept. 20, 2004) (to be codified at 20 C.F.R. Pt. 1002) ("In a discharge action based on your conduct, your employer bears the burden of proving that it is reasonable to discharge you for the conduct in question, and that you had notice that such conduct would constitute cause for discharge."). As I noted above, it is clear that the plaintiff was aware of the Work Rules, and, apart from asserting that his conduct on September 7, 2004, is "irrelevant and immaterial," the plaintiff has not disputed the defendant's argument that his deconstruction and alteration of the

---

[7]Jordan v. Jones, 84 F.3d 729 (5th Cir. 1996), was decided under the Veteran's Reemployment Rights Act (VRRA), which was the precursor to the USERRA. However, "Congress intended for case law developed under the VRRA to aid in interpreting the USERRA." McGuire v. United Parcel Service, 152 F.3d 673, 676 (7th Cir. 1998) (citations omitted).

Luckie's Lounge website violated those rules and amounted to a terminable offense. Therefore, the defendant had cause for severing its relationship with the plaintiff on September 7, 2004, and § 4316(c) offers the plaintiff no protection against termination.

I note in passing that I have studied Jordan v. Air Products Inc., 225 F. Supp. 2d 1203 (C.D. Cal. 2002), and I agree with the defendant that it is "inapposite." (Def.'s Br., Filing 33, at 14 n.3.) Jordan suggests that a person who meets all of the statutory criteria of § 4312 is not only entitled to reemployment, but cannot be terminated prior to formal reinstatement. See Jordan, 225 F. Supp. 2d at 1208-09. The court acknowledged, however, that after reinstatement an employee may be terminated "later the same day," subject to the protections offered in §§ 4311 and 4316(c). Id. at 1208. I have discussed these sections above and concluded that they do not avail the plaintiff. More importantly, in Jordan the court was not confronted with a case involving employee misconduct, and I see no good reason to extend the Jordan rule to such cases. Quite simply, I am not convinced that under the USERRA, an employer cannot terminate its relationship with an employee who engages in misconduct without first performing the empty step of formally reemploying that employee.

In sum, I find as a matter of law that the defendant's refusal to reemploy the plaintiff after he engaged in misconduct on September 7, 2004, did not violate the USERRA.

The defendant argues that since it had a legitimate, nondiscriminatory reason for terminating the plaintiff on September 7, 2004, the plaintiff cannot recover lost wages beyond that date. (See Def.'s Br., Filing 33, at 16-17.) I agree. It is axiomatic that a plaintiff cannot recover monetary damages for lost wages following his termination for legitimate reasons. See Hill v. Michelin North America, Inc., 252 F.3d 307, 316 n.5 (4th Cir. 2001) ("The termination occurred only a few working days after the transfer, and there is no indication in the record that Hill lost any wages or benefits

by virtue of the transfer. Therefore, even if Hill can prove that the transfer was motivated by his Reserve status, it appears that he will not be able to establish that he suffered any monetary damages because of the transfer." (Citing 38 U.S.C. § 4323(d)(1)(B))). However, I note that if the plaintiff demonstrates that he should have been reemployed on September 6, 2004, he may be able to establish that he suffered monetary damages prior to his "termination" on September 7, 2004.

IT IS ORDERED that:

1. The defendant's motion for summary judgment (Filing 32) is granted in part and denied in part as follows. The motion is granted inasmuch as the court has concluded that the defendant's refusal to reemploy the plaintiff after the plaintiff engaged in misconduct on September 7, 2004, did not violate the USERRA. The motion is denied insofar as there remains a genuine issue as to whether, under the circumstances of this case, reemployment should have occurred on September 6, 2004.[8]

2. The defendant's motion to strike (Filing 54) is denied as moot.

DATED this 20th day of May, 2005.

BY THE COURT:
s/Richard G. Kopf
United States District Judge

---

[8] For all practical purposes, this case has now been pared down to a claim for one day of lost wages and benefits. The parties should seriously consider settling this matter instead of burdening the court, and themselves, with the costs of conducting a jury trial.