```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEBRASKA

JEFFREY L. HAIGHT,              )
                                )
             Plaintiff,         )         4:04CV3363
                                )
      v.                        )
                                )
KATCH, LLC, a Nebraska          )     MEMORANDUM OF DECISION
limited liability               )
company, d/b/a LUCKIE'S         )
LOUNGE & GRILL,                 )
                                )
             Defendant.         )
```

Pursuant to the agreement of the parties, (filing 75), and upon their voluntary consent to have a Magistrate Judge conduct all further proceedings and enter a final judgement herein, (filing 73), the parties have submitted their joint stipulation of facts for a final ruling by the undersigned on the remaining issue of this case; that being, whether the defendant violated USERRA by failing to employ the plaintiff on September 6, 2004. Filing 76. As explained hereafter, I conclude the plaintiff has failed to meet his burden of proof, and the defendant is entitled to judgment in its favor.

**PROCEDURAL HISTORY**

The plaintiff's amended complaint alleges the defendant failed to reemploy him when he returned to his civilian job on September 6, 2004 after completing his military service. He claims the defendant's conduct violated the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 36 U.S.C.A. §§ 4301-4333. See filing 8 (amended complaint). The defendant's answer denies that it violated USERRA and further

alleges that the plaintiff's employment was terminated for misconduct.  Filing 9.

The pending issues in this case were substantially narrowed by a previous ruling by the Honorable Richard G. Kopf granting partial summary judgment in favor of the defendant.  See filing 65 (memorandum and order).  The defendant's motion for summary judgment (filing 32) was granted in part and denied in part as follows:

> The motion is granted inasmuch as the court has concluded that the defendant's refusal to reemploy the plaintiff after the plaintiff engaged in misconduct on September 7, 2004, did not violate the USERRA.  The motion is denied insofar as there remains a genuine issue as to whether, under the circumstances of this case, reemployment should have occurred on September 6, 2004.

Filing 65 at p. 14.  Based on evidence submitted on defendant's motion for summary judgment, Judge Kopf found that the plaintiff dismantled and altered the defendant's website in violation of the defendant's Work Rules, "the undisputed evidence clearly establishes that the defendant had cause for discharging the plaintiff on September 7, 2004," (filing 65 at p. 12), and "the defendant's refusal to reemploy the plaintiff after he engaged in misconduct on September 7, 2004, did not violate the USERRA." Filing 65 at p. 13.  However, Judge Kopf further held that a genuine issue of material fact remained as to whether the defendant had violated USERRA by failing to employ the plaintiff on September 6, 2004, before he engaged in misconduct which justified terminating his employment.

Accordingly, the only remaining issue is whether the plaintiff is entitled to recover under USERRA for the wages he

would have earned on September 6, 2004 had the defendant permitted him to work at his previous position that day.  The plaintiff claims the defendant violated USERRA, and therefore he "is entitled to damage in the amount of his one day wage or $100," and recovery of his "reasonable attorney fees, expert witness fees, and other litigation expenses" pursuant to 38 U.S.C. § 4323(h)(2).  Filing 77 at 3.

**STANDARD OF REVIEW**

The facts submitted on defendant's motion for summary judgment were, in all material respects, identical to the jointly submitted stipulation of facts currently before me for final resolution of this case.[1]  Based on this factual record, Judge

---

[1] While at first glance it may appear that additional evidence was submitted as part of the joint stipulation, in reality, there are only two differences.  In addition to the documents jointly submitted by the parties for final resolution of the case, the ruling of the Nebraska Appeals Tribunal was offered in support of the defendant's motion for summary judgment.  See filing 34, ex. 4.  Since this document was not submitted as part of the joint stipulation of facts, it was not considered in reaching the final ruling herein.  Of note, the decision of the Nebraska Appeals Tribunal was also not referenced in Judge Kopf's filing 65 memorandum and order granting the defendant a partial summary judgment.  The joint stipulation of facts also includes the plaintiff's final wage statement.  Filing 76, Ex. B.  This document was not offered on the motion for summary judgment, and is relevant to only the issue of damages.  Since I find the defendant did not violate USERRA, I have not made factual findings on the issue of damages.
    The plaintiff's deposition, with all attached exhibits, was offered in support of both the motion for summary judgment and the joint submission for final resolution of this case.  As such, other than the Nebraska Appeals Tribunal decision, the remaining documents, while perhaps submitted twice per filing under separate labels, were nonetheless included in both records.  Thus, the stipulation of facts signed by the plaintiff was included within Exhibit A5 (plaintiff's deposition (part 5)) of the filing 76 joint stipulation and was also included in filing

Kopf could not determine, as a matter of law, that when the plaintiff returned to the defendant employer on September 6, 2004 and demanded immediate reinstatement, the defendant had "insufficient time to arrange for the plaintiff to resume his former position during any shift on September 6, 2004, or to arrange for an alternate position for the person who took over the plaintiff's job."  Judge Kopf noted that the available evidence tended to support an inference that, in the plaintiff's case, "prompt" reinstatement under USERRA could occur after September 6, 2004, but held the defendant was not entitled to the benefit of this favorable inference on summary judgment, and if the plaintiff could show it was "practicable" for the defendant to reinstate the plaintiff to his former position on September 6, 2004, then the plaintiff may prevail on his USERRA claim.

Although the factual record before me is substantially the same as that presented on the motion for summary judgment, under the current posture of this case, the standard for reviewing those facts has changed.  This case is currently before me for final resolution based on the joint statement of facts submitted by the parties.  Unlike a motion for summary judgment, which is granted by the court only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law," (Fed. R. Civ. P. 56(c)), where the parties

---

34 (index of evidence) Exhibits 1 (Haight deposition at ex. 16), and 3 (stipulation of facts signed by the plaintiff); the September 6, 2004 e-mail from Haight to Hagge was included within Exhibits A3 and A4 (plaintiff's deposition (parts 3 & 4)), and Exhibit E of the filing 76 joint stipulation, and was also included in filing 34 (index of evidence) Exhibit 1 (Haight deposition at ex. 1); and the plaintiff's internet statement was included within Exhibit A4 (plaintiff's deposition (part 4) and Exhibit F of the filing 76 joint stipulation, and was also included in filing 34 (index of evidence) Exhibit 1 (Haight deposition at ex. 4).

have submitted the case to the court for final resolution, the court is required to make factual findings, issue a ruling which sets forth its findings of fact and conclusions of law, and enter a judgment accordingly.  Fed. R. Civ. P. 52(a).

**FINDINGS OF FACT**

I have reviewed the statement of facts set forth in Judge Kopf's memorandum and order, filing 65, and conclude they thoroughly and concisely summarize the relevant and undisputed factual record herein.  I shall therefore reiterate those facts only to the extent that they are relevant to the remaining issue before me.

The plaintiff, Jeffrey Haight ("Haight") began working for the defendant Katch LLC, doing business as Luckie's Lounge & Grill (Luckie's Lounge), in Lincoln, Nebraska on August 19, 2003.  Filing 76, ex C (Hagge affidavit) at ¶ 3.  On October 19, 2003, the plaintiff was promoted to the position of "Bar Manager" for Luckie's Lounge and he held that position through his last day of employment with the defendant.  Filing 76, Ex. C (Hagge affidavit) at ¶ 3.

The plaintiff was a member of the United States Army Reserve (USAR) when he began his employment with Luckie's Lounge, and he remained a USAR member until at least September 8, 2004.  Filing 76, Ex. A1 (plaintiff's deposition (part 1)) at 7, 9; Ex. A3 (plaintiff's deposition (part 3)) at ex. 2.  During the summer of 2004, the plaintiff received notice that his unit would be deployed to Iraq.  The plaintiff was mobilized to active duty on August 23, 2004 and was to report in Hastings, Nebraska on Monday, August 27, 2004.  Filing 76, Ex. A1 (plaintiff's

deposition (part 1)) at 7, 9. However, on August 26, 2004, the plaintiff was involved in a roller-blading accident which caused a third-degree burn on his left leg. He reported for duty on August 27, 2004, but due to his injury, he was deemed medically disqualified for training and deployment to Iraq. Filing 76, Ex. A1 (plaintiff's deposition (part 1)) at 10. The plaintiff was sent back to Lincoln by his unit on August 27, 2004, but he remained on military orders and was not officially released from the mobilization until September 8, 2004. Filing 76, Ex. A1 (plaintiff's deposition (part 1)) at 10-11.

The plaintiff never attempted to return to work and never contacted Luckie's Lounge, or its owner and manager, Kathy Hagge ("Hagge"), between August 27, 2004 and September 6, 2004. Filing 76, Ex. A1 (plaintiff's deposition (part 1)) at 10-11; Ex. C (Hagge affidavit) at ¶ 4. After the plaintiff was mobilized and before September 6, 2004, Luckie's Lounge eliminated the Bar Manager position previously held by Haight. Filing 76, ex C (Hagge affidavit) at ¶ 6. Until Haight approached Hagge on September 6, 2004, Hagge believed the plaintiff was mobilized for deployment to Iraq. She did not know the plaintiff intended to return to his job at Luckie's Lounge. Filing 76, ex C (Hagge affidavit) at ¶ 4.

September 6, 2004 was Labor Day and a Monday. Filing 76, Ex. A1 (plaintiff's deposition (part 1)) at 8. Prior to being mobilized, the plaintiff had been scheduled to work Mondays at Luckie's Lounge. Therefore, after his leg wound had sufficiently healed and the effects of his medication had worn off, he decided to return to work for his "next shift," that being on Monday, September 6, 2004. Filing 76, Ex. A1 (plaintiff's deposition (part 1)) at 12.

6

At approximately 10:30 a.m. on September 6, 2004 the plaintiff met with Hagge at Luckie's Lounge and demanded immediate reemployment as a Bar Manager. Hagge told Haight that she no longer needed a Bar Manager and offered Haight a part-time position as a cook. Haight responded that military lawyers for the Judge Advocate General (JAG officers) told him Luckie's Lounge was required to hire him back as a Bar Manager. Hagge did not reemploy Haight that day, and explained that she needed to consult with her own counsel before deciding how to proceed. Haight did not work for Luckie's Lounge on September 6, 2004. Filing 76, Ex. A1 (plaintiff's deposition (part 1)) at 12-16; Filing 76, ex C (Hagge affidavit) at ¶ 4.

## CONCLUSIONS OF LAW

The plaintiff contends the defendant violated 38 U.S.C. § 4301 and 4313(a) of USERRA by failing to "promptly" reemploy him on September 6, 2004. The plaintiff claims Hagge was required to "immediately, on the spot" employ him as a Bar Manager for Luckie's Lounge when he entered the bar on Labor Day without any prior notice and demanded reinstatement. Filing 76, Ex. A3 (plaintiff's deposition (part 3)) at 120-21. The defendant argues that no USERRA violation occurred because the plaintiff failed to provide adequate notice of his intent to return to work, Luckie's Lounge did not expect the plaintiff to report to work on September 6, 2004, the plaintiff was not on the work schedule and therefore could not return to any "regularly scheduled work period" and, under the circumstances of this case, the "prompt" reemployment requirements of USERRA did not require

Luckie's Lounge to immediately reinstate the plaintiff as a Bar Manager.[2]

Under the facts of this case, I conclude the defendant did not fail to "promptly" reemploy the plaintiff when it refused to reinstate him to begin work on September 6, 2005.

Until Haight appeared at Luckie's Lounge on September 6, 2004, the defendant was unaware that Haight had been deemed medically disqualified to be deployed to Iraq or participate in the preparatory training for that deployment. The defendant argues that Haight was required under USERRA to provide advance notice to the defendant of his intent to return to work on

---

[2]Neither party has addressed whether the plaintiff has any right under USERRA to demand reinstatement of his civilian employment while still, albeit technically, mobilized. I shall therefore not address this issue at length. I note, however, that every reference to reemployment rights in USERRA provides that such rights accrue upon the "completion" of the uniformed service. See 38 U.S.C.A. § 4301 ("providing for the prompt reemployment of such persons *upon their completion of such service*")(emphasis added); 38 U.S.C.A. § 4312(e)(1)("upon the completion of a period of service in the uniformed services", a person returning from military service shall notify the employer referred of the person's intent to return to employment); 38 U.S.C.A. § 4313 ("a person entitled to reemployment under section 4312, *upon completion of a period of service in the uniformed services*, shall be promptly reemployed")(emphasis added). While the plaintiff's amended complaint alleges he "made a brief mobilization from August 23, 2004, through August 26, 2004," (filing 8 at ¶ 7), the testimonial and documentary evidence of record establishes that Haight was subject to a military mobilization order, and was not "relieved from such duty" and "reassigned to the Reserve component" until September 8, 2004. Filing 76, Ex. A1 (plaintiff's deposition (part 1)) at 10-11; Ex. A4 (plaintiff's deposition (part 4) at p. 2-3. I can find no language in USERRA granting Haight the right to be reinstated in a civilian job on September 6, 2004 while still on mobilization orders.

September 6, 2004, and absent this advance notice, the defendant was not obligated to employ him on that date.

Haight was mobilized from August 23, 2004 to September 8, 2004. This mobilization encompassed less than thirty days of uniformed service. Under 38 U.S.C. § 4312(e)(1)(A), upon completion of a period of uniformed service that does not exceed thirty days, the person seeking reinstatement may notify the employer of his or her intent to return to work by reporting for work at the beginning of the first full regularly scheduled work period. The language of 38 U.S.C. § 4312(e)(1)(A) reflects that this statute is directed toward active duty mobilizations which were scheduled from the outset to last less than thirty-one days. Such mobilization orders provide sufficient information for employers to place employees on the work schedule because, in the absence of some unforeseen circumstance, employers know in advance when the employee will be released from active duty and available to work. The underlying purpose of § 4312(e)(1)(A) is to require employees to promptly return to their civilian employment, and report to work as scheduled, once active duty mobilizations of thirty days or less are completed.

Haight's mobilization to Iraq was not initially scheduled to be completed within thirty-one days. He was therefore not on the defendant's work schedule when he reported to work on September 6, 2004. However, he did promptly report to return to his civilian employment; he reported to work at Luckie's Lounge even before he was fully released from his mobilization order, and on the first day when, under his normal pre-mobilization work schedule, he would have been assigned to work. Under such circumstances, I conclude the plaintiff did not violate his requirement under USERRA regarding notifying the employer of his

9

intent to seek reinstatement.  The plaintiff's ability to comply with the notice requirements of USERRA should not be governed by the formality of a work schedule drafted by the employer, or dependent on the employer's ability, foresight, or motivation to schedule the plaintiff to resume work.  Haight's USERRA claim does not fail for lack of sufficient notice to the defendant of his intent to be reemployed.

However, under the facts of this case, the fact that Haight complied with his employer notification requirements did not create a right to be immediately reemployed upon reporting to work.  While USERRA is to be liberally construed in favor of those who perform military service, (see <u>Fishgold v. Sullivan Drydock and Repair Corp</u>., 328 U.S. 275, 285 (1946), cited in <u>Alabama Power Co. v. Davis</u>, 431 U.S. 581, 584-85 (1977); <u>King v. St. Vincent's Hosp.</u>, 502 U.S. 215, 221 n.9 (1991)), USERRA's statutory scheme also acknowledges the impact of active duty deployments on employers and fellows employees.  USERRA attempts to strike an appropriate balance affording due respect to both the employees and the employer.  A stated purpose of USERRA is "to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service."  38 U.S.C. § 4301 (a)(2).

Accordingly, 38 U.S.C. § 4312 outlines the notification requirements employees must follow with respect to employers, while 38 U.S.C. § 4313 sets forth the employer's corresponding obligation to employees who have complied with § 4312 and are entitled to reemployment.  Section 4313 states that "a person

entitled to reemployment under section 4312, upon completion of a period of uniformed services, shall be promptly reemployed. . . ."

USERRA does not define "prompt" reemployment and, to date, the Department of Labor ("DOL") has not promulgated regulations implementing USERRA or interpreting the requirement of "prompt" reemployment.  The DOL has, however, published proposed regulations for public comment.  See Regulations Under the Uniformed Services Employment and Reemployment Rights Act of 1994, as Amended, 69 Fed. Reg. 56266 (2004)(to be codified at 20 C.F.R. pt. 1002)(proposed September 20, 2004).  Section 1002.181 of the DOL's proposed regulations defines and interprets "prompt reemployment."  Id. at 56295.

The language of proposed regulation § 1002.181, and the corresponding and substantially similar language of USERRA's legislative history, have been relied on by courts in interpreting the "prompt" reemployment requirements of USERRA.  See filing 65 (memorandum and order) at 8 (relying on Rogers v. City of San Antonio, 392 F.3d 758, 763 (5th Cir. 2004), and Vander Wal v. Sykes Enterprises, Inc., 377 F. Supp. 2d 738, 746 (D.N.D. 2005)(also relying on Rogers).  Section 1002.181 of the proposed regulations states:

> "Prompt reemployment" means as soon as practicable under the circumstances of your case.  Absent unusual circumstances, your reemployment must occur within two weeks of your application for reemployment. For example, prompt reinstatement after your weekend National Guard duty generally means the next regularly scheduled working day.  On the other hand, prompt reinstatement following several years of active duty may require more time, because your employer may have to reassign or give notice to another employee who occupied your position.

11

"It is clear that USERRA does not require immediate reemployment but instead 'prompt reemployment' which depends upon the facts and circumstances of each particular case." Vander Wal, 377 F. Supp. 2d at 746.  "Prompt reemployment" means as soon as practicable under the circumstances.  Rogers, 392 F.3d at 763.

Under the facts of this case, I conclude that Haight's right to prompt reemployment did not require the defendant to immediately reemploy him when he reported to work on September 6, 2004.  Until the plaintiff spoke with Hagge on September 6, 2004, the defendant justifiably believed that even assuming Haight ever sought reinstatement of his employment at Luckie's Lounge, this return to work would not occur until Haight returned from performing active duty service in Iraq.  When an employee is mobilized for extended service, especially to overseas combat locations such as Iraq, neither the employee nor the employer can reasonably anticipate the precise date of the employee's return, nor is the employer required to project work schedules months (and perhaps years) in advance to accommodate that return.  Employers are also not required to indefinitely maintain the "status quo" in their business operations pending the return of mobilized employees.  See 38 U.S.C. 4312(d)(1)(codifying a statutory defense to requiring reemployment where the employer's circumstances have changed and reemployment is impossible or unreasonable).

On September 6, 2004 Haight was entitled to demand reinstatement in the position he would have held had he been continuously employed at Luckie's Lounge, (see 38 U.S.C. § 4313(a)(1)(A)), which would include being promptly placed on the defendant's work schedule, but he was not entitled to immediate reemployment.  When Haight reported to work on September 6, 2004,

the defendant had no reason to anticipate his arrival, and Haight was therefore not scheduled to work.  Haight's prior position as a Bar Manager had been eliminated, and presumably other employees were already performing the defendant's necessary work for that day.  Under such circumstances, it was not "practicable" and it would be unreasonable to require the defendant to spontaneously create a position for the plaintiff, send another employee home from work, or simply "make work" in order accommodate the plaintiff's demand for immediate reemployment.

I need not, and do not, discuss when Haight's "prompt reemployment" should have begun.  This court has already determined, as a matter of law, that the defendant did not violate USERRA by terminating Haight's employment for misconduct effective September 7, 2004.  See filing 65.  I do, however, find that Haight was also not entitled under USERRA to be employed by the defendant on September 6, 2004.

The plaintiff has failed to prove the defendant violated any of plaintiff's reemployment rights under USERRA.  Judgment will be entered for the defendant.

DATED this 5th day of October, 2005.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge